Is yours v. Hicks? Is it Regatte? Is that correct? Yes, sir. Okay. Good morning, Your Honors. May it please the Court, I'm Raymond Regatte. Please pick the microphone up so we can hear you. Oh, yes. Good morning. May it please the Court. All right. I'm Attorney Raymond Regatte on behalf of the appellant, Mr. Hicks. Your Honor, if I may reserve three minutes for rebuttal. Okay. Your Honors, this case really comes down to officers having no articulable, reasonable suspicion. I thought that we communicated to you. I know you're concerned about the automobile stop and the seizure, but from the communication that went out, it should be clear to you that we're not all that concerned about the seizure or the stop. The issue that we're concerned about is the shackling issue, which I don't even think you briefed. What issue, Your Honor? The shackling issue. Oh, it's briefed. Okay. All right. I didn't get a communication from the Court. Maybe it came in the e-mail. Your calls are shaking. You didn't get that either? I did not get that either, Your Honor. All right. I'm sorry. I thought that went out. Okay. Well, yes, Your Honor. The shackling issue is, I believe, straightforward in this case. First, we would assert that the matter was claimed by counsel. What would your relief be? I mean, as I understand it, and this is a procedure that certainly came in after I was an assistant U.S.A. in the Eastern District. Because when I was there, the jurors actually came in. Somehow the names were drawn. I guess this happened at that earlier phase where you're actually drawing the names. It's computerized, so the computer spits out those people who were summoned to jury duty who are going to then be voir dire to sit on the panel. Is that right? It suggests, right, it's the beginning process of the voir dire in that you have the larger pool of folks who have been called for jury duty, and the defendant is invited to participate by being present, I guess, on the second floor of the building. What does it look like where he is present? I'm sorry, Your Honor? What does it look like? Is it just a computer? Apparently it's a computer drawing of the names of the individuals in the room who are going to make up the panel that will get voir dired in the second phase of the voir dire, but it seems that this district combines the process. And so as a result, our argument is that it's a critical stage of the proceedings. Well, there's no case that the trial starts with the selection of the jury itself, the appointment of the jury, not the array that the jury is going to be selected from. There's no case which says you have a right to be present at the array from which the jury is eventually selected. I think that was a question. Okay. It's a question. Yes, sir. Where does your client have a right to be present at the selection of the array from which the panel will be drawn? Well, first, he was informed that he had the right to be present at the array. That information is not supported by any case law, is it? Not directly, no. Is it indirectly supported? I think indirectly it is in that it doesn't seem that this district is making this distinction. It seems that they're blending both the array and the voir dire together. Every case I've read, have you read anything to the contrary? No, I haven't. The trial starts with the selection of the actual empanelment of the jury. But the argument here is that the empanelment of the jury begins in this district court with the computer drawing. In which case do you have to support that the jury selection is right to be present at the jury as is with the array? There is no case that I can direct you to your attention. You're hoping it will be U.S. v. Hicks. I'm sorry? You're hoping it will be U.S. v. Hicks. Yeah. I mean, I think that's a fair assessment. But where's the prejudice? Even if you're right about that, where is the prejudice? Prejudice is in creating the impression that the proceedings are unfair to both the defendant and to the community at large. He was informed the day before that, look, you have this right. Let me explain it to you because here we let the defendant participate in this process. So if you're allowing the defendant to participate in this process, then I think you have to treat him as any other defendant. And he has a right to appear unshackled. But even if you're right, what is the remedy here? I think the remedy, unfortunately, is a new trial. Why? Nothing involving the shackling impacted in any way on the trial? Well, because it impacts the integrity of the process. And the integrity of the process is important because we can't allow criminal defendants to perceive that they're going to be treated differently or unfairly. And that has value not just to them but to the community at large. And that's the concern. If he were allowed to go and view the array from which the panel is selected, how would he be allowed to do that? Could he have objected to anyone being selected for the panel? The array from which the panel would be selected. Could he have objected? I think he could have objected when it came time to go upstairs at the actual voir dire based on his observations. That's what I wanted to ask you. There are two different things happening. The first is just the selection of the veneer, and then you get into the panel selection. Yes. But the people who were at the veneer and who presumably saw him shackled are all going to have been part of the initial selection, right? Because they don't pick 12 more people. Right. So whatever prejudice there may have been at that time, they would have seen him shackled. Yes. Yes. You haven't made that point. I'm sorry. That is a very important point. Will they see him? Because initially the way you described it, I thought computer names are spit out, that's it. Then you take the people whose names are being selected and they go to the jury room. My impression was that the prospective people are there in the room. Are they questioned? No, they're just being picked from a pool. They're the larger pool. They're getting selected through this process. Would they have seen him shackled? I mean, is the veneer, is it like this courtroom and all those people are part of the veneer and then some of them, the computer spits out some of them and then they go downstairs to my floor? I believe so, and I think that's why the attorney brought this to the attention of the trial judge, saying that, look, you know, we want him present and we want him to appear unchackled. And the judge said, look, that will be made to happen when you go above, but I can't have that happen below when we start picking the names out. And so the attorney turns to Mr. Hicks and says, look, if you go, you have a right to be present on the second floor. If you are present on the second floor, people who will be on this jury are going to see you shackled. I see. So he wasn't present then. Right. Okay, he used his, he made a choice not to be present. Yes. All right, but then you go back to Judge Cowan's question, which is does he have a right to be present when the computer is spewing out the names? And I think in this case, yes, because this district court appears to consider this part of the jury selection process. Yeah, but whatever we call it, that's just the name that people place on it. The question is, Judge Cowan says, is there any case that says that that's the beginning of the process? No, there isn't any case that I can directly point to that says this is the beginning of that process. There are a lot of cases that say the beginning of the jury, of the Sixth Amendment right to be present is when the impanelment of the actual jury. Yes, but I would assert, or Mr. Hicks asserts, that the impanelment here began at the computer process on the second floor because, again, he's being informed not only do you have this right to be present, the next day the court wants him to fill out a waiver, a written waiver saying that he was electing not to be present. And he made that election because he was told that if he wanted to participate he could, but then the jury would see him, people that would be on this jury, would see him shackled. So he was given no choice, really. But there are a lot of court rules which say, a defendant's rights in the selection of the actual jury panel that's going to hear the case. Yes. What rule allows you to object during the selection of the, from the array of the people that are going to eventually be making up the panel? There's not a rule that I'm aware of. Are you aware of some rule where you can go down there at the selection process of the venere from which the jury will be appaneled to object to the way they're selecting the people that are going to be in the venere? I see. No, I don't think that the client, I mean, that's not where you're necessarily voicing your objection to screen out a particular juror. Well, if you don't have a right to, if there's no rule or anything allowing you to object to it, then how can you have a right to even be there in the first place? Well, because the court itself created that right, created this. You want us to extend, you want us essentially to extend the law. I don't know about extending it. I think perhaps recognizing. Well, if there is no law now, then you want us to extend it. Okay. I mean, I'm viewing it more from the perspective that the way jury appanelment is taking place in the district court, in this district court, the process begins with the computer, not with when you go upstairs. And the reason I say that, and perhaps that's what I'm asking, isn't it? Yes. It's not so much an, well, I guess an extension of the rule, or that the rule begins in this case here because of the way this district, the quirky way that this district court begins the process. But we really enunciate a rule that's only for this district because of the, I mean, you're talking about a constitutional right. Now, you can't have a constitutional right in the eastern district of Pennsylvania and not for the rest of the country. Except that perhaps in the rest of the country they're doing, they're initiating the process differently. And that makes it semi-interesting. Well, it's interesting what the question is, what we do about it. Okay. Your position is they're doing it wrong in the rest of the country if they don't allow you to go down and see the actual jury selection. No. I think the rule is if you're going to say you have the right to be present at the beginning of this process, okay, then you have the right to appear as somebody, I think what's the expression, as any other free man with the dignity of dressing in civilian attire, not Hancock the chaplain. So pioneering then. Is that the idea? Yes. All right. I'm in favor of pioneering. Okay. Reasonable pioneering. Let's put it that way. Well, as a matter of substance, what right of the defendant is affected if we were to say that, if we were to follow the general principle that the trial starts and the critical phases begin when the panel is selected, the voir dire begins, et cetera. I mean, what difference does it make to, unless you can make some kind of an, well, we'll ask the government. Let me hold that question. Okay. You had a burning desire to get into the Terry Stopp issue. Yeah, which I do think. Maybe I spoke too soon. I was not concerned about it, but maybe my colleagues are. I thought a letter had gone out. I didn't get one. It may have, and sometimes with the computer. Okay. Well, you have some time for it. Yeah. Oh, I see. All right. Thank you, Judge. Good morning, Your Honors. May it please the court. I am Bernadette McKeown and I represent the United States in this matter. Help me out. This is a procedure that came around after I did. Are the jurors physically in the room? Yes, Your Honor. If I could set the stage for you, which I think is the most important thing. The jury panel is assembled, and I mean panel at large, on the second floor in a very large unsecured room. The attorneys, when they elect to attend this process, they sit in the front of the room just at a long table, and they face out at what looks like a large classroom. There are just rows of seats. There's a bank of windows behind at the room, so it's not like a courtroom that's secured with no windows. That's in this building. Some courtrooms have windows. That's correct. In this building. In New Jersey they have windows. That older courthouse, yes, Your Honor. I thought we didn't call her a criminal in New Jersey. I'm a judge. There's also, it's important to note that the elevators, it's the main bank of elevators, so it's difficult to transport a prisoner to this area. We've been in that building. Right. The jury, there's usually several hundred potential jurors assembled in this room. They're as a mechanical selection by number. When their numbers are selected, the jurors are told to walk to the front of the room. They leave the first couple of rows empty, and they assemble according to their number. Ms. McHugh, are they told this is the defendant? No. This is Mr. Hicks. Are there several defendants in there? No. It would be each case that's called, the attorneys are given the opportunity, and their client, should they elect to go, are given the opportunity to just simply watch the numbers called, the people walk to the front of the room, they assemble. But why isn't there some lingering effect if Mr. Hicks were to walk in, in shackles, and just sit there, and then a few minutes later or an hour later, they go to the second, to the mother floor, and now some of the people who were in the first veneer are, obviously, are part of the people whose names got spewed out by the community. So now they saw Mr. Hicks, if he had come, with his chains on, and now they see him in a suit and tie. But why isn't there some lingering effect? There may well be, and that's, in terms of shackling and handcuffing, it's well established that there has to be a compelling state reason for a defendant to appear in front of a jury in shackles and handcuffs. And what does the record here say about that? What on this record shows that the court had reason to shackle? The court did not articulate its reasons, but its reasons are obvious, and they were the security concerns associated. But those reasons go to any defendant, unless you're dealing with a white-collar defendant. That's correct, Your Honor. Any defendant who's in custody would— He had a gun holster at one point. Mm-hmm. He had a gun holster at one point. Yes, Your Honor. He was charged with a firearms offense. I would assume, maybe I'm wrong here, I would assume the marshals didn't let him come into the courtroom with a gun. That's correct, Your Honor. And, of course, he was not shackled or handcuffed during the trial, and I'm sure he appeared in street clothing. How do you get that? How do you wipe away the image? I'm on the jury. I go in, and it's a whole new thing to me. I go into this big room and this wonderful building, and I'm told I'm going to be on jury duty. And I see this guy come in, and I'm supposed to give him the presumption of innocence and determine whether or not the government has met its burden of proof. And the very first image I get of this guy is somebody who the government deems has to be shackled. How do you get rid of that? Well, you may not be able to. That may influence a jury, which is why the judge and his own attorney cautioned him against electing him to go. But the question is, did the judge err by telling this defendant that he would have to be shackled and handcuffed if he elected to go to the jury room? I suggest the question is, does he have a right? He has no constitution. Well, that's what we have to decide. Well, he may not have a constitutional right to be there, but the judge said he could be. And your problem is that although he had no right to be there at the array of the jury, the judge told him he could go there, but only if he's shackled. And the question in my mind, and maybe you can answer it, is why the judge said he could try the case without being shackled, but he couldn't go and watch the array from which the veneer would be selected, but then he had to be shackled. As Judge McKee has said, there's nothing on this record which indicates that there was an enhanced security problem at the array that wasn't also present at the actual trial. I disagree, Your Honor. I think there's a huge difference between a defendant attending this unsecured area that contains hundreds of people that is on the second floor of the courthouse that has a bank of windows. There's a risk of escape, and there's a safety risk to the assembled people. The judge never articulated that. The judge didn't articulate any reasons. That's the problem. Excuse me. That is your problem, that the judge allowed him to be tried without being shackled, but did not say why. And to shackle someone, you've got to articulate a reason. He never articulated a reason, did he, why he had to be shackled if he wanted to go and watch the array. He didn't articulate the reasons, but they're well established in this courthouse. Every district court judge is very familiar. Excuse me. Let her finish. I didn't hear the rest of her answer. Every district court judge is very familiar with the layout of the second floor and the lack of any safety precautions. I'm not familiar with that. The safety precautions are the marshals or the people at the front of the building that check us all through, check them all through. But, Your Honor, we are talking about somebody who is in custody and charged with a dangerous offense. He has to be transported. Certainly, the only other alternative available to the judge would be to have allowed him to attend without being shackled and handcuffed. He would have had to be accompanied by a phalanx of marshals in order to ensure this. I don't understand. I have tried first-degree murder cases. And I remember it very well. I got on the elevator one morning in City Hall. In the elevator, I turned next to me, and there was the defendant and two of his alibi witnesses on the elevator with me. I felt a little uncomfortable with that, and it's a bench trial. But to say, to create this parade of horrors that it's going to be the end of the world if this guy goes into the room attended by two marshals, this phalanx of marshals, two marshals, even one marshal could do it, couldn't they? I don't think that would be adequate. They have to transport him there through the public hallways. Then he enters a room that is literally filled with hundreds of people. That is not at all secure. Every time a defendant goes into, elects to be present for this, they're always shackled? I have not in my experience, and I didn't canvass extensively, but no one's had this situation where a defendant's elected to attend. A defendant in custody would have to attend in shackles and handcuffs for security reasons, and they elect not to attend primarily because this doesn't add anything to the jury selection process. Well, Ms. McHugh, what is shackling? Tell us exactly what it is. Well, I mean, if he's handcuffed, perhaps, I'm not sure whether he would have to have his feet shackled, in other words, so that he couldn't run. Well, he couldn't walk. To me, that's shackles. It is shackles, and sometimes the defendants are, I mean, the judge here spoke in terms of being handcuffed. Whatever measures they were already taking would have to be used in transporting him through the courthouse to this unsecure area. What are the defendants wear when they're brought before? Have you done it on the trial level? Yes, Your Honor. Okay. So how many percentage-wise, from your experience, decide to come to the array? I don't know of any. I haven't had that experience, and the people that I did talk to, as I said, given the situation here, we didn't canvass extensively to find out. I didn't call the marshal's service and find out if they had had this experience. But I am hard-pressed to think of a way, an alternative to allowing this defendant to appear at this proceeding that would ensure the safety of the public. Well, maybe that's you, but what on this record reflects that it was more difficult or there were problems in having him before the array unshackled than there was having him try the case unshackled. There's nothing on this record. Well, it's an open one. There was nothing. The judge didn't go into the details, but even counsel understood that. His own counsel. I'm not from – I've never been on the second floor of this building. I'm from New Jersey, a more socially advanced jurisdiction. And so I – when you say you know – You don't have any criminals in New Jersey, is that it? Only the ones that come from New York. Thank you for spraying filler. You're making all these statements about the second floor and the problems, but I go on the record and there's nothing in this record which says there's a difference between having him shackled at the array and not shackled at the jury – at the actual trial. Your Honor. I'm sorry. I can't take your word for it anymore than I can take your friend's word for it. I can take your word for it. Thank you, Your Honor. Tell me, how do they come? Do they come through the tunnel? Yeah, that would have to be transported. He's in the custody across the street? Right. But they're shackled when they come through the tunnel. That's correct. Do I see them down there coming through? Well, the members of the public don't see them. In the parking lot underneath, you see some of them. But they also then are brought up – like to a courtroom, then they are transported in the marshal's elevators, which are located out of the sight of the jury. The jury does not see behind that closed door in a courtroom, so they are not really exposed to the public during that process. But if I could get – I'm confused now because before you said they – The defendant is exposed. The defendant is not. Not in a shackled state. They are transported by the marshals through the tunnel. They are brought up in the marshal's – into the courtrooms, that is. The elevators are located off to the right side of the bench or the left side of the bench, depending on which side of the courthouse. The jurors never see them. They are already brought into the courtroom and seated when the jurors enter the courtroom. They being the defendants. The defendants. You say from your – as I understood you, from your experience, the defendants do not come to the array. They do not go to the mechanical jury – the mechanical selection of the jury panel that has been sent to the courtroom. Certainly every defendant is there during the entire jury selection process. And that's perhaps the most important point. There was no prejudice here, absolutely no prejudice. There was very little reason for it. You said every defendant is there during the entire jury selection process. You're defining jury selection process there as being the selection of the voir dire. Exactly. The substantive jury selection process. There's nothing substantive about this process. You can't object to somebody being placed on the panel and set upstairs. You simply can watch them as they walk to the front of the room. Yeah, but prejudice has nothing to do with it. The judge said he had a right to go there. We're not dealing with prejudice any more than if they don't allow him at the jury actual trial and the state later says, well, the government says he wasn't prejudiced because he was so guilty. We proved the case anyway. Your Honor, this is here on a plain error. There was no objection made below. Counsel agreed with the district court. So it's not only prejudice. But you'd have to show prejudice that amounts to a miscarriage of justice. And there's no prejudice here. The judge said he had a right to be there. He had a right to be there. We're talking about a structural right. No, he said you can attend if you would like to attend. In other words, there was no prohibition. There's no rule that says a defendant has a right to be present at the mechanical selection of the panel, a nonsubstantive proceeding where there's no questioning of the jurors. There's almost nothing added to the process. The judge told him he could be there. Why did the judge do that? You know, why did the judge? I think the judges routinely tell the defendants that they can attend if they'd like to, but they also tell defendants who are in custody that they can't go there unless they are secured. This is part of the practice. If custody determines only on failure to pay the bond, it's troubling because if someone's in custody because they don't have the money to pay, Defendants are not held in federal custody because they can't pay a bond. They're only held if they meet the statutory criteria, that is if they are a risk of flight or a danger to the community. They're not held because they can't meet a bond. That's the state court system. So this defendant was being held because he was charged with a Section 924C violation. He was an armed career criminal. He was held because he was a danger to the community. I think that... But I think you told us that they walk him through the corridor. No. If he wanted to attend the selection, this mechanical pre-jury selection process, he would have had to be walked through the corridor. The way the elevators on the second floor are configured, there's one over near the snack bar, and then there's the main pool of elevators. There's no courtrooms on the second floor, so there's no marshal elevator that stops in an area that's... The district court clerk's office is on the second floor. That's correct. Yes, but there's no courtroom on the second floor. Do the jurors... Do they pick jurors up the judges' elevators? No. The jurors then would get on the public elevator, the main bank of elevators. Once they're selected, they're told to go to the elevators, and then they take those elevators up to the appropriate floor of the courthouse for the selection process. And they take the defendant up the judges' elevators to go to the actual voir dire. Is that right? Well, no. Each courtroom has a bank of... The marshals have their own secure elevators for purposes of getting the defendant to a court. Right, but my point is there isn't one on the second floor. That's correct. But I see my time is up. I would just like to sum up by saying, again, this comes down to, number one, our position is the district court judge did not err, but even if he did, there's no prejudice to the defendant. He hasn't even articulated a potential, I mean, a specific prejudice in this case, something about a juror that wasn't discovered, or that little opportunity that they had to observe that particular member of the panel walk to the front of the room. It's almost inconceivable that if there was something about that person's demeanor that was objectionable, that it wouldn't have manifested itself during the much longer jury selection process. So, again, I'm hard-pressed to think of any prejudice that could result from a defendant's inability to attend. If you were on a committee talking and considered the rules, you might consider asking somebody in the U.S. Attorney's Office to think about whether the judges should say that the defendant has a right to be present at this mechanical. If it is going to run into a problem. We'll be happy to follow up on that, yes. We'll give him that chance. He listens to everything. He does. He absolutely does. Anything else? No, thank you. Okay, thank you very much. Thank you. Mr. Regatta, you can either spend your rebuttal time rebutting, or if you want to get into the Terry Stop, you might get. Well, I think I'll leave the Terry Stop on the papers without waiving the arguments. But, again, really this comes down to you're told that you have a right to be present, but of course it's now conditioned on an unreasonable requirement, and that's just unfair. And actually the prejudice is palpable because, again, the integrity of the system is important. People have to have good faith and confidence. Oh, yeah, but all this is a computer spewing out numbers. I mean, you know, let's face it. We're not talking about any substantive right. Well, I don't know, though. I mean, I'm thinking in terms of like a potential bat. Well, the question we're going to have to know. Sure. Fair enough. I mean, I'm thinking in terms of potential batson challenges. You know, we can make them certainly when you go upstairs and you see the composition of the pool coming out and people making a challenge saying, look, you know, I don't want this person on the panel. You don't know that. My guess is when the person is voir dired, you'll have a decent idea as to whether or not this is a black person or a white person. No, but of course the defendant may want to know what's the original pool look like, and this is his first opportunity. But it's totally irrelevant unless you're going to challenge the – It's irrelevant, isn't it, for batson purposes? You're talking about a batson challenge in terms of discretionary, disparate use of – Proprietary challenges. Sure. You're not at a point where you're using proprietary challenges. No, but, I mean, it may make a defendant feel more comfortable that this is a fair lottery system of potential people and that there's no antics or game being played initially. Do you try a lot of criminal cases in this district? No, none. None. So I'm looking at this record and the way the lawyer is arguing it. Because I wonder if all the judges say this. It would seem that they must because, again, I come back to this, not just was he informed that he had this right, he was asked to sign a written waiver, which suggests that this is considered an important part of the overall process. Is the waiver in the record? It should be. I mean, it's not in the joint appendix, but it's clear from the transcript that he was asked to sign a written form saying that he waived. Well, the government acknowledges that. Yes. But more than that, although there may not be some actual – there are, as Judge McKee has said, a number of cases saying that you can challenge the entire array selection process. Yes. And you would not – and you'd have better insights into the array if you were actually there and saw the array from which the veneer was chosen. And that's part of the argument, yeah. Is that, again, and by conditioning your presence there – and it may well have been. He may have said, look, I don't want to be there anyway. But he was told immediately that if you want to participate in that phase, you have to appear shackled, and that's unfair. And that's it. Well, you know, every jury knows that the defendant is the defendant. So let's go back to the whole – oh, I'm sorry, the light's on – the whole shackling business. What is the rationale for saying that a defendant can't be seen or shouldn't be seen by the jury in shackles? I assume it's that it puts the finger on – it gives the government a one-up, which everything does. Yes. What I mean, it creates the impression this person's guilty and he's a dangerous criminal. Why is he handcuffed and shackled? I don't know. Okay. Thank you. Thank you. A very interesting case. We'll take the matter under advisement. Mr. Regatta, I haven't seen you before.